Boschert Merrifield Consultants, Inc. ("Boschert"), filed a notice of appeal from *Page 1049 
an order denying Boschert's motions to vacate and stay two interlocutory orders of a special master appointed to oversee the administration and enforcement of a class-action settlement agreement. We dismiss the appeal.
The underlying dispute began in December 1994, when Judy Naef filed a class action ("the Naef case") against Masonite Corporation and International Paper Company (hereinafter referred to collectively as "Masonite"). Ex parte Masonite Corp.,681 So.2d 1068, 1069 (Ala. 1996).[1] The complaint alleged "that hardwood siding sold by the defendants was inherently defective and that the defendants had systematically misled their customers about the product." 681 So.2d at 1076 (Maddox, J., concurring in the result in part and dissenting in part). The trial court certified a nationwide class. The class was defined as "all persons who have owned, or own, property on which Masonite Hardwood Siding has been incorporated and installed in the United States . . . from January 1, 1980, to the date of the Final Order and Judgment in this Action."
The Naef case was tried to a jury on the sole issue of liability. On September 13, 1996, the jury, on special interrogatories, found (1) that the hardwood siding "fail[ed] to meet the reasonable expectations of an ordinary customer," was "unreasonably prone to failure," was "not fit for the ordinary purposes for its intended use," and (2) that a "prudent company making exterior siding . . . would not have put [the hardwood siding] on the market." Subsequently, the parties executed an agreement settling the claims. An "amended settlement agreement" was approved by the trial court in a "judgment, final order, and decree granting final approval to the class settlement and Rule 54(b)[, Ala. R. Civ. P.,] determination," dated January 21, 1998.
The court-approved settlement agreement provided for the selection of a firm to serve as an independent claims administrator, which was to "administer the relief provided by [the agreement]." The agreement also provided for the appointment of a "special master," who would "preside over implementation of the Settlement Agreement" and who would have the "power to make decisions in all matters pertaining to administration and enforcement of the Settlement Agreement, subject to review by the court upon request of any Party."
Subsequently, Boschert began doing business with class members as a "claims service." Boschert's business and its relationship with the claims administrator were described by the special master as follows:
 "[Boschert] is a claims service that seeks out property owners who might be eligible to file claims in this class action. Its agents purport to advise their potential customers whether they might have an eligible claim for damage [] to their property. Their promise to the customer is to offer an assessment of the probability of success of the claim, to ensure that the necessary information is obtained to fulfill the requirements of the claims administrator, and to relieve the customer of further responsibility for going forward with administrative matters relating to the claim. Its fee is most often thirty per cent of any recovery attained.
 "Some of the requirements to be met in presenting a proper claim include establishing *Page 1050 
proof of ownership of the subject property; whether the product was installed within a time which would bring it within the eligible class period; presenting a sample of the product taken from the property, or submitting a deposit of $100.00; ensuring that the relevant information regarding the customer is complete and correct; and seeing that any documents, such as powers of attorney and assignment of interests are authenticated properly. The correctness of all such matters [is] necessary in order for the claims administrator to validate the claim, and submit it for inspection so that damages if any, can be determined, and payment made.
 "When these threshold matters are dealt with properly, [Boschert] then is expected to submit the claim. The claims administrator examines the material submitted by [Boschert]. If any of it is incomplete, or incorrect, the submission is returned for correction or for clarification. Obviously[,] considerable vital information, such as ownership of the property and the correctness of the authentication of documents, is uniquely within the purview of the customer, and its agent, [Boschert], not the claims administrator."
On March 12, 2003, Masonite "served" on Boschert an instrument styled as a "motion for order (1) prohibiting submission by and payment of claims to [Boschert] . . . in the Masonite class action settlement program, and (2) placing a temporary hold on all further payments to [Boschert] and its affiliates until a final order has been entered on this motion." The motion, which bore the case style and case number of the Naef case, was directed to the special master, seeking to prohibit Boschert "from further participation in any Masonite Settlement Program." It alleged that Boschert had, among other things, submitted "bogus claims with fake siding samples" and claims from individuals who were not members of the settlement class.
Following a hearing on that motion, the special master issued an order dated June 2, 2003, granting in part and denying in part the relief requested by Masonite. More specifically, it declined to prohibit Boschert from "filing claims or representing claimants in [the] class action." However, the order required Boschert to submit $100 with each claim it filed, pending further orders from the special master. Additionally, it gave Masonite "30 days to establish the number of out-of-class claims [that had] been paid to [Boschert's] claimants, and the amount paid."
On January 30, 2004, the special master issued a second order, finding that Boschert had "improperly submitted" 35 claims and that the "amount paid by the claims administrator to [Boschert] on behalf of the claimants [was] $111,133.36." The special master also found that Masonite had incurred "$36,532.36 in legal fees and costs resulting from the need to have [the] matter reviewed." The order stated:
 "Restitution of claims paid and fees and costs is to be made to [Masonite by Boschert] within 30 days from this date. In failure thereof, I shall instruct the claims administrator to accept no further claims from [Boschert], as it will have again demonstrated that it has forfeited the good faith it owes to this class action process, and to the claims administrator and claimants."
On February 20, 2004, Boschert filed two motions in the Naef case. One motion was styled as a "motion to vacate orders of special master and for entry of order defining and limiting the power of the special master in this case" ("the motion to vacate"). The other motion was styled as a "motion to stay order of special master" *Page 1051 
("the motion to stay"). In the motion to vacate, Boschert conceded that it was not a party to the action. Nevertheless, it sought an order from the Mobile Circuit Court setting aside the orders of the special master, on the grounds that the findings of the special master were contrary to the weight of the evidence and that the orders exceeded the scope of the special master's authority. In the motion to stay, Boschert specifically sought an order from the Mobile Circuit Court staying the special master's proposed instructions in its January 30, 2004, order to the "claims administrator to refuse all further claims from [Boschert]," pending a resolution of the motion to vacate. The trial court scheduled a hearing on Boschert's motions.
Before the hearing was conducted, Masonite's counsel notified Boschert's counsel that the special master had taken "the necessary steps to enforce [his] order[s]" and that the claims administrator was no longer entertaining claims submitted by Boschert. Subsequently, Boschert filed a motion styled as a "motion for temporary restraining order," seeking an order directing the claims administrator "to continue accepting class claims submitted by [Boschert], pending further orders of [the] court on the [motion to vacate] and the [motion to stay]."[2]
On March 19, 2004, the trial court denied all three of Boschert's motions in open court with the following colloquy:
 "[The court:] The court finds that it has not been shown that the special master acted either outside his authority or arbitrarily and unreasonably, and I deny the motion[s]. If [Boschert] here feels that the special master has unlawfully or tortiously interfered with [its] business, then I assume [it] has every right to bring whatever independent action it wants to under the laws of whatever state is applicable against the special master or anyone else that may have committed such a tort, but I do not find that the terms of either this court order, the Alabama Rules of Civil Procedure, or the settlement agreement have been violated. Thank you all very much.
 "[Counsel for Boschert:] Can you enter a [Ala. R. Civ. P.] 54(b) order?
 "[The court:] Sure. And the court find[ing] that there being no reason for delay certifies this as a final order."
(Emphasis added.) From that order, Boschert filed a notice of appeal; the notice of appeal is styled "Boschert Merrifield Consultants, Inc. v. Masonite Corporation et al.," and references the lower-court case number assigned to the Naef case.
On appeal, Boschert concedes that it is not a party in thiscase. Indeed, Masonite contends that the appeal must bedismissed for that reason. Specifically, Masonite argues that because Boschert is not a party in this case, it "has no standing to appeal." Masonite's brief, at 16. We agree with Masonite.
"Unless a person is a party to a judgment, he can not appeal from that judgment. That fundamental principle is one of the oldest in Alabama jurisprudence." Daughtry v. Mobile CountySheriff's Dep't, 536 So.2d 953, 954 (Ala. 1988). "One must have been a party to the judgment below in order to have standing to appeal any issue arising out of that judgment." Mars HillBaptist Church of Anniston v. Mars Hill Missionary BaptistChurch, 761 So.2d 975, 980 (Ala. 1999) (emphasis *Page 1052 
added). See also Triple J Cattle, Inc. v. Chambers,621 So.2d 1221 (Ala. 1993).
Boschert has never been a defendant, a representative, or a member of the plaintiff class in the Naef case. It is not an intervenor. Consequently, the notice of appeal filed by Boschert failed to invoke the appellate jurisdiction of this Court. For these reasons, the appeal must be dismissed.[3]
APPEAL DISMISSED.
NABERS, C.J., and HOUSTON, LYONS, and JOHNSTONE, JJ., concur.
[1] International Paper Company purchased Masonite Corporation,Ex parte Masonite, 681 So.2d at 1069 n. 1, and was the "parent company of Masonite Corporation during the lawsuit and settlement period." Masonite's brief, at 6 n. 1.
[2] This motion has never been treated by any of the disputants as a motion, pursuant to Ala. R. Civ. P. 65, for injunctive relief.
[3] Our holding that Boschert has no standing to appeal renders it unnecessary for us to consider Masonite's contention that the trial court's order denying Boschert's motions was not an appealable final judgment.